KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5681
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                       )<br>                     Plaintiff,         )<br>                                                       )<br>          v.                                          )<br>                                                       )<br> KERMIT PEREDA-REBOLLO, ,     )<br>                                                       )<br>                     Defendant.    )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>                                                       )<br>_____ ) | Criminal Case No. 08CR1456-LAB<br><br>DATE:           June 16, 2008<br>TIME:            2:00 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**<br><br>**1)   COMPEL DISCOVERY;**<br>**2)   DISMISS INDICTMENT;**<br>**3)   REVEAL GRAND JURY TRANSCRIPTS;**<br>**4)   SUPPRESS STATEMENTS;**<br>**5)   SUPPRESS EVIDENCE; AND**<br>**6)   GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENTS MOTION FOR RECIPROCAL DISCOVERY** |

COMES NOW, the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant U.S. Attorney, and hereby files its Response and Opposition to defendant's above-referenced motion, along with Government's Motion for Reciprocal Discovery. Said response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

//

**I.**

**STATEMENT OF THE CASE**

On April 13, 2008, a federal grand jury returned a three-count Indictment charging Defendants Kermit Pereda-Rebollo ("Pereda") and Daniel Preciado ("Preciado"), with transportation of illegal aliens and aiding and abetting; in violation of 8 U.S.C. § 1324(a)(2)(A)(ii) and (v)(II).

On May 8, 2008, the Defendants were arraigned on the Indictment and entered a plea of not guilty. The motion hearing is scheduled for June 16, 2008 at 2:00 p.m.

**II**

**STATEMENT OF THE FACTS**

A.   INCIDENT

On April 13, 2008, at approximately 11:00 a.m., Border Patrol Agents Santos, Damian, and Senior Patrol Agent Salzano were conducting Border Patrol Operations at the U.S. Border Patrol Checkpoint located on Interstate 8 near Pine Valley, California. The checkpoint was closed due to high winds. At about 12:00 p.m., the agents received a citizen's report of a dump truck that loaded several suspected illegal aliens near Tierra Del Sol in Boulevard, California. The agents quickly located a vehicle matching the description heading west bound on I-8 near Kitchen Creek Road. Agent Santos performed a vehicle stop of a Freightliner, FL 70 - Dump Truck, bearing California License plate 6G20810 near the I-8 Border Patrol Checkpoint near Pine Valley, California.

Agents Salzano and Santos approached the vehicle and identified themselves as border patrol agents to the driver and passenger, later identified as Pereda and Preciado, respectively. For officer safety, the agents had the occupants get out of the vehicle. Pereda exited the driver's seat and Preciado exited the passenger seat. Agent Salzano asked the two men what their citizenship and place of birth were. Pereda stated that he was born in Mexico City, Mexico, and that he did not have any immigration documents that would allow him to enter or remain in the United States legally. Preciado stated that he was a United States citizen, but he claimed he left his documents at home. After further questioning Preciado claimed that he was a Resident Alien from Mexico but he did not have his resident alien card with him at the time.

1   Agent Salzano asked Preciado if there was anything in the vehicle that was illegal. Neither
2   Preciado nor Pereda responded. Agent Salzano informed them that a canine search for drugs would be
3   performed on the vehicle.

### B. CANINE SEARCH

Agent Salzano and Narcotics Detector Dog "Bartel" conducted a search of the vehicle. "Bartel" is trained and certified in the detection of methamphetamine, heroin, cocaine, marijuana, and concealed humans. "Bartel" alerted on the passenger side of the vehicle and followed the odor to the gate of the dump in the back of the truck. Agents Salzano and Damian climbed on the truck and observed 12 suspected illegal aliens lying on the bottom of the five yard dump area. The agents identified themselves as United States Border Patrol Agents. All of the suspected illegal aliens admitted to being undocumented Mexican citizen illegally present in the United States. At 12:08 p.m., the Defendants and the 12 undocumented individuals were arrested and transported to Campo Station processing unit.

### C. CRIMINAL AND IMMIGRATION RECORDS CHECK

Once at the station, the Defendants were searched for officer safety by Agent Damian. In Preciado's pocket, Agent Damian found a Motorolla cell phone and a hand written note containing directions to the location where the citizen report had first seen the truck.

A subsequent records check revealed that Pereda did not have a criminal record, but did have a prior immigration record. The records check revealed that Preciado had a criminal record but no immigration history.

### D. POST-ARREST STATEMENTS

Pereda and Preciado were both read their Miranda rights and agreed to answer questions without a lawyer being present.

## III.

## ARGUMENT

A.   DEFENDANT'S MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

The defendant has filed request for discovery and to preserve the evidence in this case. To simplify the response, the various items sought have been broken down into the following categories: (1) items to which the Government has no objection; and (2) items to which the defendant is not entitled.

**(1) Brady Material.** The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(2) Any Proposed Rule 404(b) Evidence.** The Government has already provided Defendant with information regarding Defendant's known prior criminal offenses. The Government will disclose in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). To the extent possible, the Government will provide the Rule 404(b) evidence to Defendant within two weeks prior to trial. The Government will also provide notice of all impeachment evidence by prior criminal convictions as required by Fed. R. Evid. 609.

**(3) Request for Preservation of Evidence.** The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, _ U.S._ , 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. RIVERA-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(4) Defendant's Statements.** The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional

oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3rd Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(5)** **Tangible Objects.** As previously discussed, the Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the

Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(6) Expert Witnesses.** The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This shall include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons for those opinions.

**(7) Witness Addresses.** The Government will provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. , 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992), citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)©." United States v. Yung, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980).

**(8) Jencks Act Material.** The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement,

or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). While the Government is only required to produce all Jencks Act material <u>after</u> the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(9) Informants and Cooperating Witnesses.** At this time, the Government is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under <u>Roviaro</u>. <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant somehow involved in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

**(10) Specific Request to View A-Files of Material Witnesses.** As previously discussed, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

**(11) Residual Request.** The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

B. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY,
AND THE INDICTMENT SHOULD NOT BE DISMISSED

It bears noting that the Hon. Barry Ted Moskowitz and the Hon. John A. Houston, both recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here. <u>See</u> Order of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4. The United States adopts the reasoning in those Courts' previous orders and request that this Court reach the same result. Attached as Appendix 1 is the "Partial Transcript" of the Grand Jury Proceedings. Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant portions of the voir dire proceedings.

1  Other courts of this district have repeatedly rejected the arguments raised by Defendant before, and we ask this Court to do so again.

### C. DEFENDANT'S MOTION TO REVEAL GRAND JURY TRANSCRIPTS

The United States will comply with 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2. The United States does not intend to call any witness that testified before the grand jury in its case-in-chief. Thus, this request is moot.

### D. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant contends that the stop performed by the border patrol agents on April 13, 2008 violated the Fourth Amendment, and any evidence obtained, including statements by the defendant and the material witnesses must be suppressed. [Def. Mot. at 27.] As set forth below, his motion is meritless and should be denied.

The Fourth Amendment allows officers to perform "brief investigatory stops of persons or vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted); Terry v. Ohio, 392 U.S. 1 (1968). "A temporary detention or seizure of a person is 'justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.'" United States v. Woods, 720 F.2d 1022, 1026 (9th Cir. 1983) quoting Florida v. Royer, 460 U.S. 491, 498 (1983). In forming reasonable suspicion, the officer is entitled to draw upon personal experience and specialized training and to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted). "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is simply "a particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less than "probable cause." Arvizu, 534 U.S. at 274.

The inquiry is whether "a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot." United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1084 (9th Cir. 2000) quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). If

police have reasonable suspicion, a <u>Terry</u> stop may also be used to investigate a completed felony, not just an ongoing one or in anticipation of a crime. <u>United States v. Grigg</u>, 498 F.3d 1070, 1074-5 (9th Cir. 2007).

The border patrol agents had reasonable suspicion to believe that Pereda was involved in criminal activity, i.e. transporting illegal aliens. On April 13, 2008, at approximately 11:00 a.m., Border Patrol Agents Santos, Damian, and Senior Patrol Agent Salzano were conducting Border Patrol Operations at the U.S. Border Patrol Checkpoint located on Interstate 8 near Pine Valley, California. The checkpoint was closed due to high winds. At about 12:00 p.m., the agents received a citizen's report of a dump truck that loaded several suspected illegal aliens near Tierra Del Sol in Boulevard, California. The agents quickly located a vehicle matching the description heading west bound on I-8 near Kitchen Creek Road. Agent Santos performed a vehicle stop of a Freightliner, FL 70 - Dump Truck, bearing California License plate 6G20810 near the I-8 Border Patrol Checkpoint near Pine Valley, California. Agents Salzano and Santos approached the vehicle and identified themselves as border patrol agents to the driver and passenger, later identified as Pereda and co-defendant Preciado, respectively. For officer safety, the agents had the occupants get out of the vehicle. Pereda exited the driver's seat and Preciado exited the passenger seat. Agent Salzano asked the two men what their citizenship and place of birth were. Pereda stated that he was born in Mexico City, Mexico, and that he did not have any immigration documents that would allow him to enter or remain in the United States legally.

Agent Salzano asked Preciado if there was anything in the vehicle that was illegal. Neither Preciado nor Pereda responded. Agent Salzano informed them that a canine search for drugs would be performed on the vehicle. The narcotics detector dog alerted on the passenger side of the vehicle and followed the odor to the gate of the dump in the back of the truck. Agents Salzano and Damian climbed on the truck and observed 12 suspected illegal aliens lying on the bottom of the five yard dump area. The agents identified themselves as United States Border Patrol Agents. All of the suspected illegal aliens admitted to being undocumented Mexican citizen illegally present in the United States. The defendants and the 12 undocumented individuals were placed under arrest. The totality of these

1  circumstances provided the agents with a "a particularized and objective basis" for suspecting that
2  Pereda was involved in criminal activity. <u>Ornelas</u>, 517 U.S. at 696.
3      For all of the foregoing reasons, the Court should deny Pereda's motion to suppress for an
4  alleged violation of the Fourth Amendment.
5      E.    <u>DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED</u>
6      The evidence will show that at the time of his apprehension, Pereda was properly advised of his
7  <u>Miranda</u> rights. Pereda stated he understood those rights and waived them. The agent made no threats
8  or promises to induce Pereda to waive his rights. The evidence will show that the waiver was knowing
9  and voluntary, and the statements were freely and voluntarily made.
10     F.    <u>DEFENDANT'S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS</u>
11     The Government does not oppose Pereda's request to file further motions if they are based on
12 new discovery or other information not available to Pereda at the time of this motion hearing. The
13 Government requests leave to file additional response and opposition papers in the event Pereda is
14 granted leave to file additional motions.
15     G.    <u>GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY</u>
16     1.    <u>Rule 16(b)</u>
17     The defendant has invoked Federal Rule of Criminal Procedure 16 in his motion for discovery.
18 The Government has voluntarily complied with the requirements of Federal Rule of Criminal Procedure
19 16(a). Thus, the 16(b) provision of that rule, pertinent portions of which are cited below is applicable:
20     The Government hereby requests the defendant permit the Government to inspect, copy, and
21 photograph any and all books, papers, documents, photographs, tangible objects, or make copies of
22 portions thereof, which are within the possession, custody, or control of the defendant and which he
23 intends to introduce as evidence in his case-in-chief at trial.
24     The Government further requests that it be permitted to inspect and copy or photograph any
25 results or reports of physical or mental examinations and of scientific tests or experiments made in
26 connection with this case, which are in the possession or control of the defendant, which he intends to
27 introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant
28 intends to call as a witness. The Government also requests that the Court make such orders as it deems

necessary under Rules 16(d)(1) and (2) to insure that the Government receives the discovery to which it is entitled.

### 2. Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except the defendant. The new rule thus provides for the reciprocal production of <u>Jencks</u> statements. The Government hereby requests that the defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes, and reports.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's motions should be denied.

DATED: June 13, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/ Randy K. Jones
RANDY K. JONES
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: randy.jones2@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR1456-LAB |
| Plaintiff, ) | |
| v. ) | |
| ) | CERTIFICATE OF SERVICE |
| KERMIT PEREDA-REBOLLO, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **United States' Response and Opposition to Defendant's Motions Together with Statement of Facts and Memorandum of Points and Authorities, and Government's Motion for Reciprocal Discovery** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Elizabeth Barros, Elizabeth_Barros@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2008

1 |             <u>s/ Randy K. Jones</u>
2 |             RANDY K. JONES